UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |
|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 1 of 9 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [44]**

**I.**
**PROCEDURAL BACKGROUND**

On March 4, 2026, Plaintiff John Doe 1 ("Doe 1") filed a complaint against Defendants Kristi Noem, Pamela Bondi, Immigration and Customs Enforcement ("ICE"), Todd Lyons, Ernesto Santa-Cruz, Jr., and Fereti Semaia. [Doc. # 1 ("Compl.").] Doe 1 is the brother of Plaintiff John Doe 2[1] ("Doe 2") the Real Party in Interest. *Id.* at ¶ 9. On March 9, 2026, the Court set an expedited briefing schedule for Doe 1's anticipated motion for preliminary injunction. [Doc. # 16.] Doe 1 filed an MPI on March 13, 2026. [Doc. # 18 ("MPI").] On March 20, 2026, Defendants filed a response to the MPI requesting the Court delay ruling on the motion in light of their attempt to facilitate the return of Doe 2 to the United States without further litigation. [Doc. # 40.] The parties filed a stipulation to stay all Court deadlines pending Doe 2's return to the United States, which the Court approved. [Doc. ## 41, 42.]

Pending before the Court now is Doe 1's "motion" for Temporary Restraining Order filed on March 26, 2026. [Doc. # 44 ("TRO Application").] Doe 2 is scheduled to return to the United States on March 31, 2026. *Id.* at 2.[2] Defendants intend to detain Doe 2 upon his reentry to the United States and transport him to the Adelanto ICE Processing Center. *Id.* at 8. Defendants filed an opposition confirming they intend to detain Doe 2. [Doc. # 47 ("Opp.").]

---

[1] The Court granted Doe 1 and Doe 2 leave to proceed under pseudonyms. [Doc. # 12.]

[2] All page citations herein refer to the page numbers generated by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |

| | | | |
|---|---|---|---|
| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 2 of 9 |

Doe 1 requests a TRO enjoining Defendants from detaining Doe 2 upon or after his reentry to the United States for the pendency of these proceedings and to remain in effect unless and until the Court conducts a bond hearing as a remedial measure. TRO Application at 21–22.

**II.**
**FACTUAL BACKGROUND**

On June 17, 2026, while on a walk, Doe 2 was taken by ICE agents in an unmarked vehicle to the Field Office in Downtown Los Angeles. Compl. at ¶¶ 20–23. Doe 2 is 50 years of age, a monolingual Spanish speaker, and is diagnosed with Schizoid Personality Disorder and has an I.Q. of 47—the equivalent of a four-and-a-half-year-old child. *Id.* at ¶¶ 8, 10, 17, 18. Doe 2 was placed under a conservatorship in May 2007 and lives with assistance from his family, including his conservator and brother Doe 1. *Id.* at ¶ 19. Doe 2 was born in Mexico and has resided in the United States since the early 1990s. *Id.* at ¶ 8.

On June 20, 2025, Doe 2 was transported to Adelanto. *Id.* at ¶ 28. On June 22, 2026, Doe 2 met with a lawyer sent by his family at Adelanto. *Id.* at ¶ 32. The lawyer identified Doe 2 as a potential *Franco-Gonzalez* class member.[3] *Id.* at ¶ 33.

Four days later, on June 24, 2025, Doe 2 was removed to Mexico under "voluntary departure." *Id.* at ¶¶ 36, 39. According to an ICE officer, Doe 2 stated he wanted to return to Mexico. *Id.* at ¶ 39. Doe 2 was allegedly reviewed by medical staff for competency. *Id.* Doe 2, a monolingual Spanish speaker, allegedly signed documents in English showing his "consent" to removal. *Id.* at ¶ 42. Doe 2's conservator Doe 1 did not receive any notice of his removal. *Id.* at ¶ 39.

Upon review of the record, it is apparent there is no history of immigration enforcement as to Doe 2. Doe 2 has no record of previous immigration proceedings or an Alien Registration Number. No Notice to Appear in Immigration Court was served on him prior to his removal. *Id.* at ¶ 39; *see also* MPI at 9–12. No removal proceedings were, or have been, initiated against Doe 2. Compl. at ¶ 39. Doe 2 has not appeared before an Immigration Judge. *Id.*

Upon arrival to Tijuana, Mexico, Doe 2 was admitted to a hospital for a mental health crisis. *Id.* at ¶ 45. He is currently housed with extended family members in Tijuana. *Id.*

---

[3] *See Franco-Gonzalez v. Holder*, No. CV 10-02211-DMG (DTBx), 2013 WL 3674492, at *1 (C.D. Cal. Apr. 23, 2013) *and Franco-Gonzalez v. Holder*, No. CV-10-02211-DMG (DTBx), 2014 WL 5475097, at *1 (C.D. Cal. Oct. 29, 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |
|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 3 of 9 |
|---|---|---|---|

### III.
### LEGAL STANDARD

The Federal Rules of Civil Procedure explicitly authorize parties, for good cause, to seek relief via an *ex parte* application for expedited ruling rather than through a regularly scheduled motion. Fed. R. Civ. P. 6(c); *see generally Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488, 492-93 (C.D. Cal. 1995) (discussing proper use of the *ex parte* procedure). To justify *ex parte* relief, an applicant must make two separate showings. "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492.

TROs are governed by the same standard applicable to preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking injunctive relief must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Fox Broad. Co., Inc. v. Dish Network LLC*, 723 F.3d 1067, 1072-73 (9th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008)). An injunction is also appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in [his] favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). "Because injunctive relief prior to trial is a harsh and extraordinary remedy, it is to be granted sparingly and only in cases where the issues are clear and well defined and the plaintiff has established a reasonable certainty of prevailing at trial." *Watermark, Inc. v. United Stations*, Inc., 219 U.S.P.Q. 31, 32-33 (C.D. Cal. 1982) (citing *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141 (9th Cir. 1964)).

### IV.
### DISCUSSION

**A.     Doe 1's Claims**

Doe 1 brings the following causes of action for Real Party in Interest Doe 2 alleging violations of: (1) Doe 2's Fifth Amendment right to due process, his right to counsel under *Franco-Gonzalez v. Holder*, 767 F. Supp. 2d 1034, 1038 (C.D. Cal. 2010), and immigration enforcement regulation 8 C.F.R. § 287.8(c)(vii); (2) Doe 2's Fifth Amendment right to counsel; (3) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |
|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 4 of 9 |
|---|---|---|---|

Administrative Procedure Act 5 U.S.C. § 706(2); (4) Section 504 of the Rehabilitation Act 29 U.S.C. § 794; and (5) Doe 2's Fourth Amendment right against unlawful stop and arrest, and immigration enforcement regulation 8 C.F.R. § 287.8(c)(3).  Compl. at ¶¶ 75–104.

Doe 1 requests that the Court order Defendants to facilitate Doe 2's remittance into the United States.  Prayer for Relief at ¶ 5.  In addition to this relief, Doe 1 asks the Court to:  (1) enter a declaratory judgment that Defendants' actions, which resulted in Doe 2's arrest, detention, and deportation, violated the United States Constitution and/or the APA; (2) enter a declaratory judgment that Defendants violated the APA when they failed to follow and violated immigration enforcement policies regarding the treatment of individuals with obvious mental impairments in detention, including Doe 2; (3) hold unlawful and set aside Defendants' arrest, detention, and removal of Doe 2; (4) hold Defendants jointly and severally liable for general, special, and punitive damages to the extent statutorily authorized; and (5) award costs and reasonable attorney fees incurred under the Equal Justice to Justice Act, 28 U.S.C. § 2412.  Prayer for Relief at ¶¶ 1–8.

**B.      The Immigration and Nationality Act**

Doe 1 cites to Section 1225 and 1226 of the Immigration and Nationality Act ("INA") and *Zadvydas v. Davis*, 533 U.S. 678 (2001).  8 U.S.C. §§ 1225, 1226; TRO Application at 13.  Defendants argue that Doe 2 may request a bond hearing pursuant to *Maldonado Bautista v. Santacruz*, No. ED CV 25-01873-SSS (BFMx), --- F. Supp. 3d ---, 2025 WL 3288403, *1 (C.D. Cal. Nov. 25, 2025), upon his return.  Opp. at 2.  On the current evidentiary record, however, none of these provisions appear to be applicable to Doe 2.

Section 1225 of the INA applies to "applicants for admission" and governs the detention of noncitizens seeking admission into the United States.  8 U.S.C. § 1225; *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1111 (E.D. Cal. 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).  Section 1225 is inapplicable to Doe 2—he has resided in the United States since the "early 1990s" until June of 2025 when Defendants removed him purportedly through voluntary departure.  Defendants, who have stipulated to allow his return to the United States, cannot claim he is now a noncitizen seeking admission.  *See Saldana Guzman v. Noem*, No. CV 25-9687-DMG (AGR), 2025 WL 3691994, at *4 (C.D. Cal. Oct. 31, 2025) ("The plain language of 'seeking admission' does not logically apply to someone like [plaintiff], who has resided in the United States for nearly two decades.").

Rather, Section 1226 would be more appropriate as it generally applies to noncitizens already present in the country.  8 U.S.C. § 1226.  Yet, on this unusual record, Section 1226 also appears to be inapplicable.  Section 1226 concerns noncitizens arrested and detained "pending a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |
|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 5 of 9 |
|---|---|---|---|

decision on whether the [noncitizen] is to be removed from the United States."  8 U.S.C. § 1226.
There is no "decision" "pending" as there were never any removal proceedings against Doe 2.
And Defendants have not shown that there was a warrant issued by the Attorney General pursuant
to which Doe 2 was arrested and detained.  Similarly, *Bautista* is inapplicable.  The *Bautista*'s
Bond Eligible Class applies to class members subject to Sections 1225 or 1226.  *Bautista*, 2025
WL 3288403, at *8.  At present, the parties have not shown that Doe 2 is subject either to Section
1225 or 1226.

**C.     The TRO**

The Court therefore turns to the other claims in the Complaint to assess whether a TRO is
warranted.

**1.          Serious Questions Going to the Merits**

Doe 1 raises serious questions as to the merits of his claims.  According to the Complaint,
Doe 2 was detained and deported without *any* process.  No removal proceedings were initiated
against Doe 2 and, accordingly, no pre-deprivation bond hearing was held.  The complete lack of
process implicates Doe 2's right to procedural due process as articulated in *Mathews v. Eldridge*,
424 U.S. 319, 335 (1976).  The three-part inquiry in *Mathews* requires the Court consider:  (1) the
private interest affected by the official action; (2) the risk of erroneous deprivation of that interest
through the procedures used, as well as the probable value of additional safeguards; and (3) the
Government's interest, including the administrative burden that additional procedural
requirements would impose.  *Id.*  Doe 2 unquestionably has a liberty interest in his continued
freedom from detainment—strengthened by his length of stay in the United States.  *See Doe v.
Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).  Defendants' removal of Doe 2 without
any process at all subjected him to a high risk of erroneous deprivation.  Finally, the Government's
interest in removing Doe 2 without any process was low.  The effort and cost of providing Doe 2
with even a single procedural safeguard to which he was entitled was minimal.  *See id.* at 1094.
Doe 2 was held for no longer than four days at Adelanto before Defendants removed him to Mexico
on the rationalization that he "consented" to "voluntary removal."

Doe 2's purported "consent" to removal is cast in serious doubt by Doe 2's documented
and apparent disabilities and status as a conservatee.  *See Zinermon v. Burch*, 494 U.S. 113, 136
(1990) (statutory scheme that allowed a mentally ill person to purportedly give "informed consent"
for admission to and treatment at state mental hospital denied him procedural safeguards and led
to a foreseeable deprivation of his rights); *Bacher v. Patencio*, 368 F.2d 1010 (9th Cir. 1966)
(finding contracts entered into by conservatees null and void under California law); Cal. Civ. Code

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 26-2331-DMG (MARx) | Date | March 30, 2026 |
|---|---|---|---|

| Title | *Doe 1, et al. v. Kristi Noem, et al.* | Page | 6 of 9 |
|---|---|---|---|

40 ("a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his or her restoration to capacity").

Regarding his arrest by ICE, Doe 1 alleges violations of Doe 2's Fourth Amendment rights and immigration enforcement regulations. Fourth Amendment protections attach to detention and apply in the civil immigration context. *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 817 (9th Cir. 2020). An immigration arrest requires probable cause. *Id.* (citing *Tejeda-Mata v. Immigration & Naturalization Serv.*, 626 F.2d 721, 724–25 (9th Cir. 1980)). Section 287.8 sets forth the standards for immigration enforcement activities. 8 C.F.R. § 287.8. An immigration officer may arrest "only when" the officer "has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States." 8 C.F.R. § 287.8(c)(2)(i). A warrant shall be obtained except when the immigration officer has reason to believe the person is likely to escape before a warrant can be obtained. *Id.* at § 287.8(c)(2)(ii). The immigration officer, at the time of arrest, must identify himself or herself as an immigration officer authorized to execute an arrest and state that the person is under arrest and the reason for the arrest. *Id.* at § 287.8(c)(2)(iii). According to the Complaint, Doe 2 was on a walk in a residential neighborhood near a local park when an unmarked grey vehicle pulled up alongside him. Doe 2 did not have identification, but he attempted to provide them with a card that included contact information for his conservator. Doe 1 has raised a serious question as to the merits regarding whether the immigration officers properly identified themselves and had probable cause to arrest Doe 2 without a warrant.

Furthermore, Doe 2 was not provided counsel pursuant to *Franco-Gonzalez*. *See Franco-Gonzalez v. Holder*, 767 F. Supp. 2d 1034, 1038 (C.D. Cal. 2010). Due to his mental disability, Doe 2 was entitled to representation during "all phases of [his] immigration proceedings." *Id*. at 1061. Although removal proceedings were not initiated against Doe 2 before his removal, serious questions are raised as to whether Doe 2's legal rights under *Franco-Gonzalez* may have triggered in the time between his detainment and his removal and thereby could have prevented an erroneous removal.

Finally, Doe 1 claims that Defendants violated immigration enforcement regulations and disability rights during Doe 2's four-day stay in Adelanto. ICE has directives specific to the treatment of individuals with diminished capacity in immigration detention. Compl. at ¶ 91. Because Plaintiffs have raised serious questions as to his procedural due process, *Franco-Gonzalez*, and Fourth Amendment claims, the Court need not address these remaining claims at this time. Suffice it to say that courts may set aside unlawful, constitutional, or arbitrary and capricious agency actions. 5 U.S.C. § 706(2). Judicial review of agency action is available to any "person suffering legal wrong because of [the] agency action, or adversely affected or aggrieved

---

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | | Date | March 30, 2026 |
|---|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | | Page | 7 of 9 |
|---|---|---|---|---|

by [such] action." *Garro Pinchi v. Noem*, No. CV 25-05632-PCP, --- F. Supp. 3d ---, 2025 WL 3691938, at *19 (N.D. Cal. Dec. 19, 2025) (quoting 5 U.S.C. § 702) (applying Section 706(2) to the Department of Homeland Security's re-detention policy). These claims remain at issue following Doe 2's return to the United States.

### 2.  Irreparable Harm

Doe 2 clearly faces irreparable harm in the absence of judicial intervention. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention[.]" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The fact of Doe 2's likely detention upon his return to the United States constitutes irreparable harm.

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 995 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed above, Doe 2 has a liberty interest in his continued freedom from detention. "[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd and remanded on other grounds*, 562 U.S. 134 (2011); *see also Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).

Defendants seek to first detain Doe 2, then allow Doe 2 to "request" a bond hearing. Opp. at 2. The record reflects that Doe 2 already has suffered from an egregious lack of due process and could potentially suffer unique emotional and psychological injuries due to his disabilities, which includes his post-traumatic stress disorder diagnosed following a prior alleged wrongful arrest by the Los Angeles Police Department. *See* Decl. of Katie Townsend ISO MPI ("Townsend Decl. ISO MPI"), Ex. A [Doc. # 43 (sealed).]. "Emotional injuries, psychological distress, and risk of suicide may constitute irreparable harm." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). Doe 2 was already hospitalized for a mental health crisis upon his arrival in Tijuana and it is likely further detention at Adelanto would require rehospitalization. Indeed, Doe 2's disability, namely his level of functioning, directly renders him particularly vulnerable to injury by further detention.

//
//
//

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |
|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 8 of 9 |
|---|---|---|---|

### 3.      **Balance of Equities and Public Interest**

The remaining two factors for injunctive relief—the balance of the equities and public interest—"merge" when the government is the opposing party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotation marks omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants [injunctive relief]." *Hernandez*, 872 F.3d at 996 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)). The public has an interest in the resolution of Doe 2's constitutional and statutory claims. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Defendants have not identified any harm to the Government and the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id.* (quoting *Zepeda v. INS*, 753 F.2d 719, 722 (9th Cir. 1983)). In light of these circumstances, the Court finds the balance of the equities and the public interest tips sharply in favor of Plaintiffs.

### 4.      ***Status Quo Ante Litem***

The parties dispute what the *status quo ante litem* of this action is. The *status quo ante litem* is the "last uncontested status that preceded the parties' controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). The *status quo ante* refers to the distinction between prohibitory injunctions (*status quo ante litem*) and a mandatory injunction (where a party is ordered to take action beyond maintaining the *status quo ante*). *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009); *see also Doe 4 v. Lyons*, 783 F. Supp. 3d 1281, 1298 (W.D. Wash. 2025) (applying *status quo ante litem* to a TRO). The *status quo ante litem* of this action is for Doe 2 to remain within the custody and care of his conservator and not detained at Adelanto. The gravamen of Doe 2's harms, and the controversy in this action, stem from his unlawful arrest, detention, and removal. Restoration to the *status quo ante litem* requires Doe 2 to remain out of custody and to be returned to the care of Doe 1, his conservator, upon his return to the United States. *Accord Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1138 (W.D. Wash. 2025) (finding immediate release restored petitioner to *status quo ante litem* where the pending controversy stemmed from the petitioner's re-detention); *see also Mustafa Anif Afshar v. David Marin, et al.*, No. CV 26-00308-JAK (Ex), 2026 WL 412358, at *7 (C.D. Cal. Feb. 9, 2026) (finding immediate release restored petitioner to *status quo ante litem* where the detention itself was unlawful) (collecting cases); *Valencia Zapata v. Kaiser*, No. CV 25-07492-RFL, 2025 WL 2578207, at *4 (N.D. Cal. Sept. 5, 2025) (same) (collecting cases).

---

CV-90            **CIVIL MINUTES—GENERAL**            Initials of Deputy Clerk DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-2331-DMG (MARx)** | Date | March 30, 2026 |
|---|---|---|---|

| Title | ***Doe 1, et al. v. Kristi Noem, et al.*** | Page | 9 of 9 |
|---|---|---|---|

In light of the Court's ruling on what constitutes the *status quo ante litem*, the Court need not address Plaintiffs' request for a bond hearing at this time.

**D.      Bond**

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

**V.
CONCLUSION**

In light of the foregoing, Plaintiff's *ex parte* application for a TRO is **GRANTED**. Defendants, their officers, agents, employees, representatives, and all persons acting in concert or participating with them, are **ENJOINED** from detaining John Doe 2, Real Party in Interest, on his arrival to the United States on March 31, 2026[4] and on any date thereafter during the pendency of these proceedings.  During the course of these proceedings, Petitioner shall remain within the custody and care of his conservator, within this judicial district, and able to appear at any hearings in this action, if necessary, to ensure the orderly disposition of his claims.

Defendants are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not be granted preventing them, their officers, agents, employees, representatives, and all persons acting in concert or participating with them, from detaining John Doe 2, Real Party in Interest, on his arrival to the United States on March 31, 2026 or on any date thereafter during the pendency of these proceedings.  Defendants shall file any supplemental response to Plaintiff's motion for preliminary injunction by no later than **April 3, 2026.**  Plaintiffs shall file their reply by no later than **April 8, 2026.**  The Court will hold a hearing regarding Plaintiffs' motion for preliminary injunction on **April 13, 2026 at 4:00 p.m.**

**If at any time before the April 13, 2026 hearing the parties stipulate to any form of interim relief, they shall *immediately* inform the Court of that development.**

**IT IS SO ORDERED.**

---

[4] Defendants agreed and stipulated to John Doe 2's return to the United States on March 31, 2026.  [Doc. # 41, 47.]  In the event the date of John Doe 2's arrival to the United States changes, this Order applies with equal force to the later date.